O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GRACY B., | ) | Case No. 8:20-cv-01241-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On July 13, 2020, plaintiff Gracy B. filed a Complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of examining physician Dr.

1

Daniela Drake; (2) whether the ALJ properly considered plaintiff's symptom testimony; and (3) whether the appointment of former Commissioner of Social Security, Andrew Saul, was constitutional.  Mem. in Supp. of Pl.'s Compl. ("P. Mem.") at 7-15; Pl.'s Notice of New Authority ("Notice") at 1-2; *see* Mem. in Supp. of Def.'s Answer ("D. Mem.") at 1-11.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly evaluate plaintiff's subjective symptom testimony, but properly evaluated Dr. Drake's opinion.  The court also rejects plaintiff's constitutional argument as incomplete and contrary to law.  Because the ALJ erred in evaluating plaintiff's symptom testimony, the court reverses the decision of the Commissioner denying SSI benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 45 years old on the alleged disability onset date, has a seventh grade education.  AR at 53, 60.  She has past relevant work as a nurse's assistant.  AR at 52.

On February 20, 2017, plaintiff filed an application for SSI, alleging an onset date of October 6, 2016.  AR at 60.  Plaintiff claimed she suffered from anxiety, depression, mood swings, migraine headaches, carpel tunnel syndrome, arthritis, endometriosis, large fibroids, ulcers, and insomnia.  AR at 60-61. Plaintiff's application was initially denied on June 9, 2017.  AR at 89.

Plaintiff requested a hearing, which the assigned ALJ held on April 19, 2019.  AR at 30.  Plaintiff, represented by counsel, appeared and testified at the hearing.  AR at 35-54, 57-58.  The ALJ also heard testimony from David Rinehart, a vocational expert.  AR at 52-57.  The ALJ denied plaintiff's claim on July 2, 2019.  AR at 16-25.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since February 20, 2017, the application date.  AR at 18.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease at L5-S1, migraines, fibromyalgia, and obesity.  *Id.*  The ALJ also found plaintiff suffered from the non-severe impairment of mood disorder.  AR at 19.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 20.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the ability to perform:

> medium work as defined in 20 CFR 416.967(c) as follows: can lift
> and/or carry 50 pounds occasionally and 25 pounds frequently; can
> stand and walk about 6 hours out of an 8 hour day; can sit for about 6
> hours out of an 8 hour day; push and/or pull without limit other than
> as shown for lift and/or carry; can occasionally climb
> ladders/ropes/scaffolds; can frequently climb ramps/stairs, balance,
> stoop, kneel, crouch, and crawl; can occasionally reach overhead with
> bilateral upper extremities; cannot work in a loud work environment,
> SCO noise intensity level 4 or greater; must avoid concentrated
> exposure to fumes, odors, dusts, gases, poor ventilation, etc; and

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1    cannot work around hazards such as dangerous moving machinery and

2    heights.

3  AR at 21.

4        The ALJ found, at step four, that plaintiff was capable of perform her past

5  relevant work as a nurse's assistant.  AR at 24.  The ALJ accordingly concluded

6  plaintiff was not under a disability, as defined in the Social Security Act, at any

7  time since February 20, 2017.  *Id.*

8        Plaintiff filed a timely request for review of the ALJ's decision, but the

9  Appeals Council denied the request for review on May 12, 2020.  AR at 1.

10  Accordingly, the ALJ's decision became the final decision of the Commissioner.

11                                        **III.**

12                            **STANDARD OF REVIEW**

13        This court is empowered to review decisions by the Commissioner to deny

14  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

15  Administration ("SSA") must be upheld if they are free of legal error and

16  supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th

17  Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based

18  on legal error or are not supported by substantial evidence in the record, the court

19  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

20  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

21  1144, 1147 (9th Cir. 2001).

22        "Substantial evidence is more than a mere scintilla, but less than a

23  preponderance."  *Aukland*, 257 F.3d at 1035 (citation omitted).  Substantial

24  evidence is such "relevant evidence which a reasonable person might accept as

25  adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

26  1998) (citations omitted); *Mayes*, 276 F.3d at 459.  To determine whether

27  substantial evidence supports the ALJ's finding, the reviewing court must review

28

                                        4

the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks and citation omitted).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks and citation omitted).

## IV.

## DISCUSSION

**A.    The ALJ Failed to Properly Consider Plaintiff's Testimony**

Plaintiff argues the ALJ failed to articulate legally sufficient reasons to discount her subjective symptom testimony.  P. Mem. at 11-15.

### 1.    Legal Standard

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016.  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at 2.

[SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to

1 delve into wide-ranging scrutiny of the claimant's character and

2 apparent truthfulness.

3 *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

4 To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

5 analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting

6 *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant

7 produced objective medical evidence of an underlying impairment that could

8 reasonably be expected to produce the symptoms alleged. *Id.* Second, if the

9 claimant satisfies the first step, and there is no evidence of malingering, the ALJ

10 must evaluate the intensity and persistence of the claimant's symptoms and

11 determine the extent to which they limit her ability to perform work-related

12 activities. *Id.*

13 In assessing intensity and persistence, the ALJ may consider: a claimant's

14 daily activities; the location, duration, frequency, and intensity of the symptoms;

15 precipitating and aggravating factors; the type, dosage, effectiveness, and side

16 effects of medication taken to alleviate the symptoms; other treatment received;

17 other measures used to relieve the symptoms; and other factors concerning the

18 claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing

19 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80

20 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996)). To reject the claimant's subjective

21 symptom statements, the ALJ must provide "specific, clear, and convincing"

22 reasons, supported by substantial evidence in the record, for doing so. *Id.* at 921,

23 929.

24 **2.   Plaintiff's Subjective Symptom Testimony**

25 In a disability report dated August 24, 2017, plaintiff claimed she was

26 disabled due to impairments that caused pain, blurred vision, dizziness, and

27 disorientation. AR at 21 (citing AR at 214). Her pain was so severe in her legs

28

that she could not walk until it subsided. *Id.* She allegedly loses her balance often because her leg gives out on her. *Id.* (citing AR at 221). She further claimed that she was no longer able to do household tasks or walk her dog, and that driving her daughter to school was difficult because of her low energy, headaches, and disorientation. *Id.* (citing AR at 217). She does not go out because she feels constantly sick. *Id.* (citing AR at 226). She also stated that her medications gave her side effects. *Id.* (citing AR at 216-17).

At the hearing in April 2019, plaintiff testified that she could lift a gallon of milk only on a good day, could not sit for more than ten minutes, could stand for only a couple of minutes before having to walk, and could walk for only 15 minutes. AR at 22 (citing AR at 41-43). She also claimed she spends most of her time in bed because of her pain, although she could take her daughter to school on a good day. *Id.* (citing AR at 44).

### 3.   The ALJ's Findings

At the first step for evaluating plaintiff's symptom testimony, the ALJ found her medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 22. At the second step, the ALJ discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record. AR at 22-23.

As an initial matter, the court must determine the correct standard to review the ALJ's evaluation of plaintiff's symptom testimony. The ALJ discounted her testimony based, in part, on her poor effort on range of motion testing. *See* AR at 23 (citing AR at 271). The Ninth Circuit's clear and convincing standard does not appear to apply in cases involving malingering, although it is unclear whether that is still the case after the adoption of SSR 16-3p. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (clear and convincing standard applies only "[i]f the

claimant meets the first test and there is no evidence of malingering").  Here, the court need not decide one way or another because, although the ALJ considered plaintiff's lack of effort during examination, he did not affirmatively find her to be a malingerer.  *See Tagle v. Colvin*, 2016 WL 5662076, at *7 (C.D. Cal. Sept. 28, 2016) (ALJ noted plaintiff's poor effort and exaggeration but did not find her to be a malingerer).  Thus, the court will apply the Ninth Circuit's clear and convincing standard to this case.

First, the ALJ determined that plaintiff's symptom testimony was inconsistent with the objective medical record.  AR at 23.  The ALJ acknowledged her lumbar spine disorder and poor back mobility, but found her allegations of debilitating pain causing extreme limitations on lifting, carrying, sitting, standing, and walking were not supported by objective findings of normal motor strength, negative straight leg raising, intact sensation, lack of atrophy as an indicator of pain and inactivity, and normal gait and balance.  *Id.* (citing AR at 270-72).  The ALJ also pointed to generally normal studies of her right shoulder, thoracic spine, and cervical spine.  *Id.* (citing AR at 271, 364, 367).

Plaintiff argues the ALJ erred in considering the consistency of her symptom testimony with objective findings because her fibromyalgia "is a disease that eludes objective evidence."  *See* P. Mem. at 13.  Defendant responds that her fibromyalgia diagnosis "does not preclude consideration of consistency with the objective evidence when evaluating symptom allegations."  *See* D. Mem. at 10.

Defendant is correct that a fibromyalgia diagnosis does not foreclose any part of the disability analysis per se.  *See* SSR 12-2p, 2012 WL 3104869, at *5-6 (July 25, 2012) (explaining that sequential evaluation process also applies to cases of fibromyalgia).  Nevertheless, ALJs must consider all significant probative evidence, and explain their reasons if they choose to reject any of it.  *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  For the following reasons, the court

8

1   finds the ALJ failed to properly consider the extent to which plaintiff's

2   fibromyalgia contributes to her alleged symptoms.  *See Revels v. Berryhill*, 874

3   F.3d 648, 662 (9th Cir. 2017) (pointing out "recurrent problem" of ALJs failing to

4   properly analyze fibromyalgia-related symptoms).

5       Fibromyalgia is a poorly-understood disease with no known cause or cure.

6   *See Knight v. Saul*, 2020 WL 5518386, at *4 (E.D. Cal. Sept. 14, 2020) (citing

7   *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).  It is diagnosed entirely

8   on the basis of a patient's reports of pain and other symptoms, and there are no

9   laboratory tests, X-rays, or MRIs to confirm the diagnosis.  *Revels*, 874 F.3d at

10  656-57 (citation omitted).  "What is unusual about the disease is that those

11  suffering from it have muscle strength, sensory functions, and reflexes that are

12  normal."  *Id.* at 656 (cleaned up).  A fibromyalgia patient's joints may appear

13  normal and may lack symptoms that a lay person would ordinarily associate with

14  joint and muscle pain.  *See id.* (citation omitted).

15      Here, the ALJ found that plaintiff's symptom testimony was inconsistent

16  with, among other findings, normal X-rays of her right shoulder, thoracic spine,

17  and cervical spine, normal motor strength, negative straight leg raising, and intact

18  sensation.  But as the Ninth Circuit has cautioned, those findings may not tell the

19  whole story about the condition of a person suffering from fibromyalgia.

20  Specifically, the ALJ failed to consider that fibromyalgia sufferers may have

21  normal X-rays, joint anatomy, muscle strength, sensory functions, and reflexes.

22  *See Revels*, 874 F.3d at 656-57.

23      Notably, the ALJ determined that plaintiff's fibromyalgia was a severe

24  impairment and noted multiple findings of positive fibromyalgia tender points

25  throughout 2018.  *See* AR at 18, 22 (citing AR at 421, 423, 425, 427).  The ALJ

26  also indicated that he considered the diagnosis pursuant to the SSR 12-2p

27  guidelines.  AR at 21.  But other than acknowledging her tender points, the ALJ

28

did not explain or even mention her fibromyalgia at all in discounting her testimony. *See* AR at 21-24. In other words, the ALJ failed to evaluate the medical evidence and plaintiff's symptom testimony "in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and [caselaw]." *Revels*, 874 F.3d at 662-63, 666 (finding the ALJ erred by discounting symptom testimony from a fibromyalgia patient based on normal X-rays, nerve conduction and velocity studies, and MRIs).

Second, the ALJ found plaintiff's allegations of extreme limitations were not supported by her reportedly positive response to pain medications without lasting adverse side effects. AR at 23. In support of this reason, the ALJ cited records from December 2017 to November 2018, which showed a consistent level of pain of about 6/10 to 7/10 with some positive response to pain medication. *See* AR at 337, 421, 423, 425, 427, 429. Plaintiff argues the ALJ failed to consider that in September 11, 2018, her provider instructed her to switch medications and referred her to physical therapy. P. Mem. at 13 (citing AR at 368). Again, the ALJ considered the evidence of improvement on medication in a vacuum. Although the ALJ cited six separate pain records, they span less than one year, and there is no evidence the ALJ considered that symptoms of fibromyalgia wax and wane, which results in bad days and good days. *See Revels*, 874 F.3d at 663. The ALJ's failure to consider plaintiff's pain reports in light of her fibromyalgia diagnosis was error.

Third, the ALJ determined that plaintiff's testimony was inconsistent with prior statements regarding a wide array of daily activities ("ADLs"). AR at 23. Namely, during a May 14, 2017 mental evaluation, she reported the ability to do household chores, run errands, shop, cook, and drive. AR at 278. She was also able to dress and bathe herself. *Id.* The ALJ noted that these reports contradicted the extreme limitations that she testified about at the April 2019 hearing. AR at 23. In response, plaintiff highlights testimony that her level of activity depends on

whether she is having a good or bad day.  P. Mem. at 14-15.  This reason is also

deficient due to the ALJ's consideration of the evidence without apparent regard to

plaintiff's fibromyalgia diagnosis.  Again, because the symptoms of fibromyalgia

wax and wane leading to bad days and good days, "analysis of [a plaintiff's] RFC

should consider a longitudinal record whenever possible." *Revels*, 874 F.3d at 657,

660 (cleaned up).  Here, the ALJ focused on plaintiff's statements about ADLs

from a single report back in 2017.  To be fair, it is not clear whether there were

other longitudinal records the ALJ could have considered.  Even so, the ALJ

should have explained why plaintiff's fibromyalgia did or did not inform his

evaluation of the discrepancy in ADLs from mid 2017 to early 2019.  *See Vincent*,

739 F.2d at 1395 (ALJ must explain rejection of significant probative evidence).

Fourth, the ALJ found that plaintiff's testimony was inconsistent with the

opinions of state agency physicians Drs. R. Masters and R. Jacobs, which

supported the capability for medium work activity.  AR at 23.  Plaintiff objects to

this reason on the basis of outdated caselaw preceding the adoption of SSR 16-3p.

*See* P. Mem. at 13-14.  The real issue with the ALJ's reasoning, however, is that it

is also linked to his failure to properly consider her fibromyalgia.  Although the

opinions of Drs. Masters and Jacobs were largely similar, the ALJ ultimately gave

greater weight to Dr. Jacobs's opinion, finding it was better supported by the

evidence, including objective findings.  *See id.*  But the ALJ's conclusion that Dr.

Jacobs's opinion is more consistent with the objective findings than Dr. Drake's

rests on the ALJ's faulty evaluation of the objective record explained above.

Accordingly, this reason is not clear and convincing either.

The ALJ's fifth and final reason to discount plaintiff's testimony was her

poor effort on range of motion testing.  AR at 23 (citing AR at 271).  Plaintiff does

not address this reason.  Even without an affirmative finding of malingering, an

ALJ may rely on a claimant's poor effort as a reason to discount his or her

symptom testimony.  *Collins v. Astrue*, 2009 WL 1202891, at *5-6 (C.D. Cal. Apr. 27, 2009) (evidence of poor effort was clear and convincing reason to discount plaintiff's symptom testimony).  The ALJ here claims plaintiff's poor effort in range of motion testing weighs against her allegations of debilitating pain causing extremely limited lifting, carrying, sitting, standing, and walking restrictions.  *See* AR at 23.  But the ALJ does not sufficiently explain how plaintiff's poor effort on a single test translates into what is essentially a wholesale rejection of her symptom testimony.  Additionally, fibromyalgia is an unusual disease that is not amenable to objective testing, which further calls into doubt the ALJ's determination.  *See Revels*, 874 F.3d at 656-57.  Ultimately, allowing the ALJ to reject plaintiff's entire testimony solely because of her poor effort on a single test would run afoul of the SSA's goal in adopting SSR 16-3p, which sought to clarify that "subjective symptom evaluation is not an examination of an individual's character."  2017 WL 5180304, at *2.  Thus, the court finds this reason was not sufficiently specific, clear, and convincing by itself under the circumstances.

In sum, the ALJ failed to consider plaintiff's symptom testimony in light of her severe fibromyalgia.  *See Revels*, 874 F.3d at 666.  This error tainted his reasoning for discounting the testimony.  Accordingly, the court concludes the ALJ failed to properly evaluate plaintiff's symptom testimony.

**B.** **The ALJ Properly Discounted Dr. Drake's Opinion But It Should Nonetheless Be Reconsidered on Remand**

Plaintiff also argues the ALJ failed to provide legally sufficient reasons for giving only partial weight to the opinion of examining physician Dr. Daniela Drake.  P. Mem. at 7-11.

**1.** **Legal Standard**

To determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence.  20

C.F.R. §§ 404.1527(b), 416.927(b).[2]  The regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2).

The ALJ is not bound by the opinion of an examining physician.  *Lester*, 81 F.3d at 830.  If an examining physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Id.* (citation omitted).  If the opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, to discount it.  *Id.* at 830-31 (citation omitted).  The opinion of a non-examining source alone is not substantial evidence to discount an examining opinion.  *Id.* at 831 (citations omitted).  Additionally, the opinions of a specialist about medical issues related to his or her area of expertise are entitled to more weight than the opinions of a non-specialist.  *Smolen*, 80 F.3d at 1285 (citations omitted).

## 2.    Dr. Drake's Examining Opinion

On April 29, 2017, plaintiff presented to Dr. Drake's office for an internal medicine consultation.  AR at 269.  As the ALJ explained, Dr. Drake assessed plaintiff with a light functional capacity.  AR at 22.  Specifically, Dr. Drake opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull on a frequent basis; walk, stand, or sit for six hours in an eight-hour

---

[2]    The SSA issued new regulations effective March 27, 2017.  All regulations cited in this section are effective for cases filed prior to March 27, 2017.  *See* 20 C.F.R. §§ 404.1527(b), 416.927(b).

workday; occasionally bend, stoop, kneel, crawl, walk on uneven terrain, climb ladders, and work at heights; do fine manipulation without limitations; and do gross manipulation frequently. *Id.* (citing AR at 272-73).

### 3.   The ALJ's Findings

The ALJ gave Dr. Drake's opinion only partial weight.  AR at 22. Specifically, the ALJ rejected Dr. Drake's lifting, carrying, and gross manipulation restrictions.  *See id.*

As an initial matter, plaintiff concedes that Dr. Drake's opinion was contradicted by the opinions of the non-examining state agency physicians, Drs. Masters and Jacobs.  *See* P. Mem. at 8, 10.  As such, the ALJ needed to provide specific and legitimate reasons, supported by substantial evidence, to discount Dr. Drake's opinion.  *See Lester*, 81 F.3d at 830-31.  Here, the ALJ provided two reasons.  First, the ALJ found Dr. Drake's lifting and carrying restrictions were not supported by the objective medical record.  *See* AR at 22.  Second, the ALJ concluded that Dr. Drake's gross manipulation restriction was inconsistent with his own clinical findings.  *See id.*

First, the ALJ determined that Dr. Drake's lifting and carrying restrictions were not supported by the objective medical record, which was fairly minimal.  *See* AR at 22.  Namely, an April 27, 2017 X-ray of plaintiff's shoulder was normal, although X-rays of plaintiff's lumbar spine revealed moderate degenerative disease at L5-S1.  *Id.* (citing AR at 268).  Two days later, she presented to Dr. Drake's office for an internal medicine consultation.  She exhibited normal gait and balance, intact motor and sensory functions, normal range of motion in her wrists, a negative Phalen's test, and a negative straight leg raise test.  AR at 18, 22 (citing AR at 270-72).  Although she had limited mobility in the lumbar spine and shoulders, Dr. Drake reported that she was making a poor effort during the examination.  AR at 22 (citing AR at 271).  Exams of the remaining joints

throughout the upper and lower extremities were within normal limits. *Id.* (citing AR at 270-72).

X-rays of plaintiff's thoracic spine from October 10, 2017 were normal, as was a study of the cervical spine except for questioned muscle spasms. *Id.* (citing AR at 364, 367). A lumbar spine study from that same date also showed moderate L5-S1 degenerative disc compression and facet arthropathy. *Id.* (citing AR at 365). An X-ray of her hands demonstrated only early joint osteoarthritis. AR at 18 (citing AR at 366).

Starting in December 2017 and throughout 2018, plaintiff reported improvement with Lyrica without side effects after medication adjustments. *Id.* (citing AR at 337, 423, 425, 427, 429). Several 2018 examinations also recorded positive fibromyalgia tender points. *Id.* (citing AR at 421, 423, 425, 427).

The ALJ found no objective findings supporting functional limitations due to fibroids, abdominal pain, end organ damage, history of stroke, cardiovascular disease, high blood pressure, or compression of a nerve root on the spinal cord. *See* AR at 18, 20 (citing AR at 270-71).

In discounting Dr. Drake's lifting and carrying restrictions, the ALJ was particularly persuaded by Dr. Drake's findings of negative straight leg raising, normal motor strength, and intact sensation. *See* AR at 22. The ALJ also emphasized that Dr. Drake obtained these normal findings despite plaintiff's poor effort during range of motion testing in her back. *See id.* Notably, plaintiff does not argue that the ALJ failed to consider her fibromyalgia in evaluating the consistency between Dr. Drake's opinion and the objective record. Accordingly, the court finds no error in the ALJ's analysis and interpretation of the objective record, and concludes that he provided substantial evidence to support his conclusions. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("An ALJ can satisfy the substantial evidence requirements by setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." (cleaned up)); *Aukland*, 257 F.3d at 1035 ("Substantial evidence is more than a mere scintilla, but less than a preponderance." (citation omitted)).

Plaintiff argues that the ALJ is improperly using her poor effort as a sword and a shield. *See* P. Mem. at 9. She contends that Dr. Drake acknowledged the poor effort, yet still assessed a light exertional limitation. *See id.* The court is not persuaded. It is true the ALJ considered plaintiff's poor effort and arrived at a different conclusion than Dr. Drake's. But the ALJ supported his interpretation by looking at the entire objective record, which he found to be fairly minimal. As previously noted, the broader record also included largely normal findings concerning plaintiff's shoulders and hands, and reported improvement of symptoms with medication. Thus, the ALJ properly explained his disagreement with Dr. Drake. *See Seawood v. Berryhill*, 2020 WL 1624377, at *11 (S.D. Cal. Apr. 2, 2020) ("The ALJ is to resolve conflicts in the record and assess the claimant's functionability based on the record as a whole." (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008))).

Plaintiff also contends that the ALJ failed to give sufficient weight to her moderate degenerative disease and narrowing of her apophyseal joints at L5-S1. *See* P. Mem. at 9; AR at 268. She argues that the ALJ considered only evidence that affirmed his conclusion. *See id.* But the ALJ did consider plaintiff's April 27, 2017 lumbar spine X-ray. The ALJ properly weighed that evidence against the many other normal clinical findings. *See Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985) ("[T]he ALJ has the power to weigh conflicting evidence" in deciding whether the claimant suffers from an impairment).

Accordingly, lack of support in the objective medical record was a specific and legitimate reason supported by substantial evidence for discounting Dr.

1  Drake's opinion regarding plaintiff's lifting and carrying restrictions.  *See Burrell*
2  *v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ may reject treating opinion if
3  unsupported by the record as a whole or objective medical findings).

4  Second, the ALJ determined that the gross manipulation restriction (i.e.,
5  frequent gross manipulation) was not consistent with Dr. Drake's own examination
6  evidence, which included a negative Phalen's test and no other significant findings.
7  *See* AR at 22.  Plaintiff argues there were indeed significant findings to support Dr.
8  Drake's limitation.  Namely, she could only generate five pounds of force
9  bilaterally using the Jamar Hand Dynamometer.  P. Mem. at 10 (citing AR at 270).
10 She argues that grabbing the dynamometer requires gripping a decent-sized handle,
11 so the ALJ should have used his common sense to see that the dynamometer
12 finding supports the gross manipulation restriction.  *See id.*

13 Even if plaintiff is right that the dynamometer finding was evidence of some
14 gross manipulative impairment, the ALJ did not ignore that finding as plaintiff
15 alleges.  The ALJ considered all of Dr. Drake's findings and interpreted them to be
16 not significant enough to warrant any gross manipulation restriction.  *See* AR at
17 22; *Key*, 754 F.2d at 1550 ("[T]he ALJ has the power to weigh conflicting
18 evidence" in deciding whether the claimant suffers from an impairment).  The ALJ
19 specifically mentioned the negative Phalen's test because it would have revealed
20 hand numbness attributable to carpal tunnel syndrome.  *See* AR at 22; *King v.*
21 *Astrue*, 2011 WL 3273182, at *5 (E.D. Cal. July 27, 2011).  Additionally, Dr.
22 Drake's examination revealed normal range of motion in her wrists and joints of
23 her fingers, good hand coordination, and normal sensation.  *See* AR at 18 (citing
24 AR at 271-72).  At best, plaintiff has presented evidence tending to show that there
25 is more than one rational interpretation of Dr. Drake's findings, in which case the
26 ALJ's interpretation must stand.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1
27 (9th Cir. 2005) ("If the record would support more than one rational interpretation,

28

1    we defer to the ALJ's decision." (cleaned up)).

2           Accordingly, inconsistency with the evidence from the examination was a

3    specific and legitimate reason, backed by substantial evidence, to discount Dr.

4    Drake's opinion as to gross manipulation.  *Aukland*, 257 F.3d at 1035 ("Substantial

5    evidence is more than a mere scintilla, but less than a preponderance." (citation

6    omitted)); *Shavin v. Comm'r of Soc. Sec. Admin.*, 488 F. App'x 223, 224 (9th Cir.

7    2012) (explaining that legitimate inconsistencies in doctor's analysis or conflicting

8    lab test results, reports, or testimony may be specific and legitimate reasons to

9    reject medical opinion).

10          Accordingly, the ALJ provided two specific and legitimate reasons to

11   discount Dr. Drake's opinion as he did, and the reasons given were supported by

12   substantial evidence.  Nevertheless, the court notes that the ALJ may need to

13   reassess Dr. Drake's opinion depending on the outcome of his reconsideration of

14   the effect of fibromyalgia on plaintiff's condition on remand.

15   **C.    The Court Rejects Plaintiff's Vague Constitutional Challenge**

16          On August 11, 2021, almost two months after defendant filed its

17   Memorandum, plaintiff filed a Notice of New Authority.  In the Notice, she states

18   that the U.S. Department of Justice's Office of Legal Counsel issued an opinion on

19   July 8, 2021 that casts significant doubt on the constitutionality of the appointment

20   of the prior Commission of Social Security.  Notice at 1.  Plaintiff notes that she

21   filed her claim for benefits on February 21, 2017, participated in a hearing on April

22   19, 2019, received the ALJ's adverse decision on June 27, 2019,[3] and was denied

23   review by the Appeals Council on May 12, 2020.  *Id.* at 2.  She indicates that

24   Andrew Saul held the office of Commissioner of Social Security as the sole person

25   dischargeable only for cause between June 17, 2019 and July 11, 2021.  *Id.* at 1-2.

26          The court is puzzled by plaintiff's filing, which does not explain whether she

27   

28          [3]    The date of the ALJ's decision is actually July 2, 2019.  *See* AR at 25.

18

is seeking any particular type of relief as a result of the alleged constitutional problem with the former Commissioner's appointment.  Plaintiff had never raised the issue prior to the filing of her Notice.  To try to ascertain the nature of plaintiff's argument, the court reviewed other social security cases in which plaintiff's counsel also participated and raised the issue.  From that, it appears plaintiff intended to argue that the Commissioner's final decision in this case arose from an unconstitutional administrative process.  *See, e.g.*, *Rebecca H. v. Kijakazi*, 2021 WL 6881865, at *8-10 (C.D. Cal. Dec. 14, 2021).  Specifically, the allegedly unconstitutional removal provision rendered Saul's tenure as Commissioner unconstitutional, which in turn tainted his delegation of authority to the assigned ALJ and the Appeals Council to consider and decide plaintiff's case.  *See id.* at 9.

The court will not address each of the arguments plaintiff's counsel presented in other cases but not here.  The court finds only  that it is not convinced plaintiff's constitutional challenge warrants reversal here, for two reasons.  First, the Ninth Circuit recently opined that "the possible invalidity of a restriction on the removal of an official does not render invalid the appointment of the official."  *See Toni D. M. v. Kijakazi*, 2022 WL 423494, at *2 (C.D. Cal. Jan. 5, 2022) (citing *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021)).  Second, plaintiff has not even attempted to show any connection between the allegedly unconstitutional removal clause and the ALJ's or Appeals Council's decision denying her benefits.  *See id.* at 3 (citing other cases on point); *Dareth T. v. Kijakazi*, 2022 WL 671540, at *3 (C.D. Cal. Mar. 7, 2022) (same).  Accordingly, the court rejects plaintiff's incomplete constitutional challenge.

## V.

## __REMAND IS APPROPRIATE__

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to fully develop the record.  On remand, the ALJ shall reconsider plaintiff's testimony in light of her fibromyalgia diagnosis, and shall also take plaintiff's fibromyalgia into account in considering the medical opinions.  The ALJ shall then reassess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

//

//

## VI.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 30, 2022

_____
SHERI PYM
United States Magistrate Judge